**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SUSAN B. LONG and DAVID BURNHAM, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **Civil Action No. 5:06-cv-1086** |
| ) | **(NAM/GHL)** |
| UNITED STATES DEPARTMENT OF JUSTICE, ) | |
| ) | |
| Defendant. ) | |

**SEVENTH SUPPLEMENTAL DECLARATION OF SUSAN B. LONG**

I, Susan B. Long, make the following declaration under penalty of perjury:

**I.    Preliminary Issues**

1.      In April 2011, Defendant agreed to release all data in the "Other ID" (V.I. 335) field containing court docket numbers and contract/RFP numbers within the "AI" and "MN" ID types. Additionally, and of particular importance to the issues still in dispute in this litigation, at that time Defendant also agreed to release the "matter_number" field (DD 155) for sealed cases.  *See* 4/29/11 email from K. Wyer to T. Kedem, a copy of which is attached as Exhibit A hereto.

2.      However, in June 2011, Mr. Kovakas informed Plaintiffs that Defendant's litigation counsel had instructed him not to provide any data to Plaintiffs until she authorized him to do so.

3.      On June 16, 2011, Plaintiffs' counsel wrote to Defendant's counsel in this litigation and asked that Defendant provide the data that it agreed to release in April 2011 without further delay.  *See* 6/16/11 email from M. Crisp to K. Wyer, a copy of which is attached as Exhibit B hereto.  I understand that Defendant's counsel did not respond to that email.

4.      On July 12, 2011, Plaintiffs' counsel again wrote to Defendant's counsel in this litigation, and again requested that Defendant release the data it had previously agreed to provide.

*See* 7/12/11 email from M. Crisp to K. Wyer, a copy of which is attached as Exhibit C hereto.  On

July 18, 2011, Defendant's counsel responded that Defendant would release that data in

"approximately two weeks or so."  *See* 7/18/11 email from K. Wyer to M. Crisp, a copy of which is

attached as Exhibit D hereto.

5.      On July 27, 2011, I again spoke with Mr. Kovakas.  During that conversation, he told

me that the data that Defendant had agreed to release in April was not yet ready for release.  He

stated further that he would be on vacation through August 5, 2011 – the same date on which our

reply submissions are due in this action – and that Plaintiffs would not receive that data prior to his

return.

6.      In light of Defendant's protracted failure to release the data that it agreed to release

in April, and Plaintiffs' resulting inability to analyze and use that data in connection with the current

motion and cross-motion, Plaintiffs respectfully must, and do, reserve the right to submit additional

papers after Defendant does honor its promise and releases the agreed data to Plaintiffs.

## II.    Defendant Cannot Withhold Segregable Non-Exempt Sealed Cases Data

7.      Defendant has withheld non-exempt sealed cases data in six CASES fields.  Four of

those fields contain publicly available data: court, docket number, date case was filed, and date case

was closed.  The other two fields – zstart_date (DD 132) and zdisposition_date (DD 124) – contain

internal CASES data that sometimes may correspond to the publicly available data in the first four

fields.

8.      Defendant's refusal to release that data violates the strong public policy, articulated

by the Judicial Conference in 2007 and 2009, against hiding the existence of sealed cases.  *See* Long

Sixth Supp. Dec. Exs. C at 12 & D at 11.

9.      Defendant's own submissions recognize that the types of sealed cases data Plaintiffs seek – court, docket number, date case was filed, and date case was closed – as well as other data that Plaintiffs do not seek, such as nature of suit codes – are available publicly on PACER.  *See* Kovakas Eighth Supp. Dec. Exs. B-D.

10.      Additionally, I submit that Mr. Kovakas's assertion that his review of sealed cases data available on PACER shows that the data that Plaintiffs seek is not publicly available for all sealed cases should be rejected because the search methodology that he used to locate sealed cases was flawed and incomplete.

11.      Kovakas Eighth Supp. Dec. ¶ 9 argues that, based on his review, no judicial districts in 29 states have made any information about sealed cases available on PACER.  However, Mr. Kovakas is demonstrably wrong for at least two reasons.  That is, it appears that he: (1) reviewed only the "case locator" in the national PACER database, and (2) assumed that searching for the word "sealed" as the first word in a case title would locate *all* sealed cases that were publicly available in the national PACER database.  I conducted a more comprehensive search of both the national PACER database and the individual PACER databases of the 45 district courts in the 29 states identified by Mr. Kovakas as not having published any information about sealed cases on PACER, which revealed a multitude of additional sealed cases search results in those very courts.  I discuss this in more detail below, with respect to the data I found after doing my search, which corrected for both of Mr. Kovakas's evident search errors.  As I explain, my search confirmed that Kovakas Eighth Supp. Dec. is demonstrably incorrect in its assertions about the absence of sealed cases data on PACER in the 45 courts in the 29 states he identifies.

**A. Mr. Kovakas Evidently Did Not Search Individual District Courts' PACER Websites – Such A Search, Which I Have Done, Confirms That His Assertions Are Wrong**

12. As noted above, Mr. Kovakas's first apparent error was in searching only the national PACER database (the database that Mr. Kovakas searched appears in the header of his search results, *see* Kovakas Eighth Supp. Dec. Exs. B-C). That national PACER database does not include all of the information available from the individual courts' PACER websites. *See* PACER Case Locator Frequently Asked Questions, a printout of which is attached as Exhibit E hereto (stating that the national PACER database includes only "[s]ubsets of data … from each court."). The individual courts' PACER websites allow the public to find information about sealed cases using a variety of methods. A common method is to use the civil cases report tool. For example, using that tool on this Court's PACER website, I was able to retrieve the type of data at issue for two illustrative sealed cases filed in this Court. *See* Civil Cases Report for case number 5:05-cv-01266-NAM-GJD (Mordue, C.J.) and case number 5:05-cv-01296-DNH-GHL (Hurd, J.), attached as Exhibit F hereto. However, no information about those cases is available on the national PACER database. *See* national PACER database "No records found" search pages for the cases discussed above, attached collectively as Exhibit G hereto.

13. Using the 45 individual courts' PACER websites, I found that for 36 of those courts' websites the civil case reports query tool has a specific menu choice ("case flag") that allows users to generate a report on civil sealed cases in that court.[1] Screenshots for each of those 36 PACER

---

[1] Those 36 courts are: United States District Court for the Middle District of Alabama; United States District Court for the Northern District of Alabama; United States District Court for the Southern District of Alabama; United States District Court for the District of Alaska; United States District Court for the Eastern District of Arkansas; United States District Court for the Western District of Arkansas; United States District Court for the Eastern District of California; United States District Court for the Northern District of California; United States District Court for the District of Colorado; United States District Court for the District of Delaware; United States District Court for the Middle District of Georgia; United States District Court for the Southern District of Georgia;

websites, showing the ability to obtain docket information on sealed cases, are attached collectively as Exhibit H hereto.

14.     For the remaining 9 district courts –  United States District Court for the District of Arizona, United States District Court for the Central District of California, United States District Court for the Southern District of California, United States District Court for the Northern District of Georgia, United States District Court for the District of Maryland, United States District Court for the Western District of Washington, United States District Court for the District of New Hampshire, United States District Court for the District of New Mexico, United States District Court for the District of South Dakota, I was able to retrieve docket information for sealed cases using other methods discussed below.[2]

15.     I was able to retrieve docket information for sealed cases filed in the United States District Court for the District of Arizona in three different ways.  First, by reviewing a regularly updated listing of all civil and criminal cases filed in that court.  *See*

---

United States District Court for the District of Hawaii; United States District Court for the District of Idaho; United States District Court for the Southern District of Illinois; United States District Court for the Central District of Illinois; United States District Court for the Northern District of Illinois; United States District Court for the Northern District of Indiana; United States District Court for the Southern District of Indiana; United States District Court for the Northern District of Iowa; United States District Court for the Southern District of Iowa; United States District Court for the District of Kansas; United States District Court for the Eastern District of Kentucky; United States District Court for the Western District of Kentucky; United States District Court for the District of Maine; United States District Court for the Eastern District of Missouri; United States District Court for the Western District of Missouri; United States District Court for the District of Montana; United States District Court for the District of Nebraska; United States District Court for the District of North Dakota; United States District Court for the District of Utah; United States District Court for the District of Vermont; United States District Court for the Eastern District of Washington; United States District Court for the Western District of Wisconsin; United States District Court for the Eastern District of Wisconsin; United States District Court for the District of Wyoming.

[2] With respect to the United States District Court for the Central District of California, I was able to retrieve sealed cases data for cases filed in that court by using different search terms in the national PACER database.  *See* ¶ 19, *supra* & Ex. X.

http://www.azd.uscourts.gov/azd/civilcaselog.nsf/caselogs?openpage (last visited on August 2, 2011). That listing includes docket information for sealed cases. *See* Phoenix Civil Case Filing Log, attached as Exhibit I hereto, at 6 (Case Number: CV11-1149-PHX-JWS (MHB); Case Title: *SEALED v. SEALED*). Second, I was able to retrieve docket information for sealed cases using the district's PACER civil cases report tool for a given date range. That report includes docket information for sealed cases. *See* Civil Cases Report for case number 1:05-cv-332, attached as Exhibit J hereto. Third, if one knows the docket number of a sealed case, one can enter it into the district's query tool and the query returns the information that the case is sealed. *See* PACER query screenshot for case number 1:05-cv-332, attached as Exhibit K hereto. There is no charge for searching by docket numbers. However, all that data, whichever way one searches for it, is available only on the court's individual PACER website, and not on the national PACER database that Mr. Kovakas reviewed. *See* national PACER database "No records found" search pages for the cases discussed above, attached collectively as Exhibit L hereto.

16.     Additionally, I was able to retrieve docket information for sealed cases filed in the United States District Court for the Southern District of California, United States District Court for the Northern District of Georgia, United States District Court for the District of Maryland, United States District Court for the District of New Hampshire, United States District Court for the District of New Mexico, United States District Court for the District of South Dakota and United States District Court for the Western District of Washington, by searching listings provided by each district of all civil cases for any specified date range. Those listings included docket information for sealed cases that had been filed during the date range that I specified. *See* Civil Cases Report and district's PACER query screenshot for case number 06-cv-1539 filed in the United States District Court for the Southern District of California, attached as Exhibit M hereto; Select A Case report for cases filed in the United States District Court for the Northern District of Georgia, attached as

Exhibit N hereto; Civil Cases Report and district's PACER query screenshot for case number 1:06-cv-00374-CCB filed in the United States District Court for the District of Maryland, attached collectively as Exhibit O hereto; Civil Cases Report and district's PACER query screenshot for case number 1:07-cv-00143-CCB filed in the United States District Court for the District of Maryland, attached collectively as Exhibit P hereto; Civil Cases Report and district's PACER query screenshot for case number 05-cv-00029 filed in the United States District Court for the District of New Hampshire, attached collectively as Exhibit Q hereto; Civil Cases Report and district's PACER query screenshot for case number 2:06-cv-277 filed in the United States District Court for the District of New Mexico, attached collectively as Exhibit R hereto; Civil Cases Report for sealed cases filed in United States District Court for the District of South Dakota, attached as Exhibit S hereto; Civil Cases Report and district's PACER query screenshot for case number 05-cv-02088 filed in the United States District Court for the Western District of Washington, attached collectively as Exhibit T hereto.  Again, that information is available only on those courts' individual PACER websites, and not on the national PACER database that Mr. Kovakas reviewed.  *See* national PACER database "No records found" search pages for the cases discussed above, attached collectively as Exhibit U hereto.

17.     Moreover, even my search with the individual district courts' PACER websites was not exhaustive.  Often district courts have multiple methods to retrieve information about sealed cases, so there may be other methods to obtain docket information on sealed cases filed in those courts.  Additionally, I determined that different search methodologies were more (or less) successful depending on the time period for which I was searching, and so it is possible that successful search methods may have changed over time, depending upon the time period involved and the version of PACER used to record case filings at that point in time.  *See, e.g.*, 7/29/11 email from Lynn Fuller, the Operations Analyst/Media & Public Outreach Liaison for the United States

District Court for the Northern District of California, a copy of which is attached as Exhibit V

hereto (discussing change in the identification of sealed cases in the United States District Court for

the Northern District of California).  The PACER information website itself states that during the

last six years there have been eleven updated versions of the PACER software released for district

courts, and district courts use different versions.  *See* PACER Release Notes, a printout of which is

attached as Exhibit W hereto.

> **B.  Mr. Kovakas's Search Within The National PACER Database Was Limited –
> A More Comprehensive Search, Which I Have Done, Confirms That His
> Assertions Are Wrong**

18.    As noted above, Mr. Kovakas's second evident search flaw was with respect to the

limited search term that he apparently used to search within the national PACER database (an error

compounded by searching only that database, as discussed above).  That is, he searched only for

"sealed" in the case title in the national PACER database.  *See* Kovakas Eighth Supp. Dec. Ex. C.

Based on that flawed search, Kovakas Eighth Supp. Dec. ¶ 9 asserts that "[i]t appears clear . . . that

California courts do not typically make information about sealed cases publicly available on

PACER."  His assertion is demonstrably wrong, as evidenced by the public availability of

information for sealed cases filed in the United States District Court for the Northern District of

California.  That court no longer identifies sealed cases by using the word "sealed" in the case title.

Lynn Fuller, the Operations Analyst/Media & Public Outreach Liaison for the United States District

Court for the Northern District of California confirmed that policy change to me via email.  *See* Ex.

V.  In that email, Ms. Fuller stated that "[i]t is not possible to locate sealed cases in our ECF system

by searching terms such as 'sealed.'"  *Id.*  New methods are now used.  For example, the United

States District Court for the Northern District of California has added a sealed case type flag, among

other search methods, on the district's PACER query page to provide docket information on sealed

civil cases.  *See* ¶ 13, *infra* & Ex. H at 8.

19.     Mr. Kovakas's failure to use all relevant search terms resulted in even broader deficiencies in his search.  While Kovakas Eighth Supp. Dec. ¶ 9 states that he retrieved only 17 sealed cases filed in California district courts by searching for the word "sealed" in the case title, when I conducted a similar search using the word "seal," I retrieved 641 case results, including those with a case title "*Seal v. Seal*" that were not retrieved when a similar search was limited to the word "sealed."  *See* excerpts from the PACER search results for sealed cases filed in California district courts using the word "seal," attached as Exhibit X hereto.  My search results included sealed cases filed in the United States District Court for the Central District of California, *see* n.3, *supra*.  *See* Ex. X.  Additionally, when I used an asterisk, which operates as a search expander, in front of the word "sealed," I retrieved additional sealed cases that had been filed in California district courts, including sealed cases with case titles "*In Re:  Sealed I, et al v. Sealed II, et al*" and "*USA v. SEALED*," that had not been retrieved by searching only for "sealed."  *See* PACER search results for sealed cases filed in California district courts using the term "* sealed," attached as Exhibit Y hereto.

20.     Thus, contrary to Mr. Kovakas's assertion, all the courts in all of the 29 states that he identified as not having published any information about sealed cases on PACER, in fact do publish the information on sealed cases that Plaintiffs seek.

**C.   Other Demonstrable Errors In Mr. Kovakas's Assertions Concerning Sealed Cases**

21.     Kovakas Eighth Supp. Dec. ¶ 10 argues that I incorrectly stated in Long Sixth Supp. Dec. ¶¶ 21, 29-30 that the "nature of suit" codes – which Plaintiffs do not seek in this suit – are publicly available for sealed civil cases.  Mr. Kovakas asserts that there are "many examples" of PACER entries in which the "nature of suit" code is either blank or zero.  *See* Kovakas Eighth Supp. Dec. ¶ 10 & Ex. B (pointing to specific search results by him).

22.     But a more thorough review demonstrates that Mr. Kovakas again demonstrably is wrong.  As I explained previously, "nature of suit" codes are publicly available for sealed civil cases, *i.e.,* cases that appear in PACER with a "cv" designation.  *See* Long Sixth Supp. Dec. ¶¶ 21-22.  The cases for which the "nature of suit" code was blank or zero are miscellaneous cases with an "mc" designation.  *See id.* (all of Defendant's search results: # 400-420, 428-452, 454-501, 503-555, 687-747).

23.     Kovakas Eighth Supp. Dec. ¶ 14 claims that Defendant's release of the sealed cases data that Plaintiffs seek will reveal the Government's involvement in a case – "information . . . that is not conveyed by the information's availability on PACER."  However, as I explained in Long Sixth Supp. Dec. ¶ 29, the "nature of suit" data, which is publicly available for sealed civil cases, including sealed cases in which the Government is a party, demonstrates that the Government's involvement in certain sealed cases *already is publicly available.*  In fact, Defendant's submissions confirm that point.  *See, e.g.,* Kovakas Eighth Supp. Dec. Ex. B (search results # 55-56, 156, 631, 637, 641 ("Forfeiture/Penalty"); 126, 131, 278, 372, 382, 423 ("Prisoner Petitions").

24.     Moreover, as I explained in Long Sixth Supp. Dec. ¶ 32, Defendant's argument, that the release of the data that Plaintiffs seek necessarily always would reveal the Government's party status incorrectly assumes that the Government is a party to every case in CASES.  In fact, CASES even contains a disposition code "No Govt Role in Case" (code 340).  Thus, because the Government is not a party to every case in CASES, Defendant's release of non-exempt sealed cases data would not reveal the Government's party status.

25.     Mr. Kovakas does not dispute the existence of code 340.  *See* Kovakas Eighth Supp. Dec. ¶ 15 n.6.  Rather, he takes issue with the fact that Plaintiffs have not provided any examples of such cases that are under seal.  *See id.*  However, that argument is disingenuous because Defendant

has withheld *all* sealed cases data, and so Plaintiffs cannot establish any facts with respect to that data.

### D.  Defendant's Reliance Upon Qui Tam Cases Is Misplaced

26.      Defendant concedes that courts disclose the existence of sealed qui tam cases. Kovakas Eighth Supp. Dec. ¶ 13 refers to PACER docket sheets for seven sealed cases filed pursuant to the False Claims Act, which he says "may relate to sealed qui tam cases." *Id.*  All seven of those docket sheets contain the type of non-exempt sealed cases data that Plaintiffs seek. *See id.* Ex. D (listing court, docket number, date case was filed, and date case was closed).

27.      Kovakas Eighth Supp. Dec. ¶ 9, however, argues that courts "may not provide any information about sealed qui tam cases."  Kovakas Eighth Supp. Dec. ¶ 9 n.3 explains that his argument is based on his unsuccessful search for 13 sealed qui tam cases in the national PACER database.  However, Mr. Kovakas does not provide any information on the method that he used to conduct his search.  Additionally, as I discussed above, Mr. Kovakas limited his search to the national PACER database, rather than also searching the individual district courts' PACER data, so it is not surprising that he did not retrieve all publicly available sealed cases.  Further, a search for 13 isolated cases does not even attempt to show what was available on the hundreds of remaining qui tam cases, and is not in any way a statistically significant or valid sample.  Moreover, Mr. Kovakas's assertion is immaterial in any event since it does not establish that any court intended not to provide docket information for sealed qui tam cases.

28.      Kovakas Eighth Supp. Dec. ¶ 9 further states that Mr. Kovakas was "advised that over 100 qui tam cases were filed under seal in California" between 1/1/2000 and 1/1/2005, but that a search for case titles starting with the word "sealed" in the national PACER database returned only 17 sealed cases during an even longer time period.  *See* Kovakas Eighth Supp. Dec. Ex. C.

However, Mr. Kovakas does not specify how many of those 100 cases are still under seal now – six to eleven years later.  Nor does he present any evidence that docket information for any of those cases was not available on the individual PACER websites for the four United States District Courts in California, or that docket information for those cases would not have been retrievable if a different search methodology had been used.

29.     Furthermore, in Long Sixth Supp. Dec. ¶¶ 35-36, I showed that although about 915 sealed cases in CASES could be qui tam actions, there also were at least 530 non-qui tam cases in CASES.  Given that large number of non-qui tam cases, I believe that there would be no way to identify a particular sealed case as a qui tam case, and so Mr. Kovakas's assertion (Kovakas Eighth Supp. Dec. ¶ 14), that release of the data necessarily would reveal Government involvement in qui tam cases, is incorrect.

30.     Kovakas Eighth Supp. Dec. ¶ 11 argues that my calculation of the number of non-qui tam and qui tam cases in Long Sixth Supp. Dec. ¶¶ 34-37 is "flawed."  However, Mr. Kovakas does not offer any data that would contradict my calculation.  *See* Kovakas Eighth Supp. Dec. ¶ 12. The best he can do is conclusorily assert that the "vast majority" of sealed cases in CASES are qui tam cases.  *See id.*  But "vast majority" is itself a vague and undefined term that does not describe the situation accurately, and my calculation shows that 63% of total sealed cases recorded in CASES are qui tam cases (*i.e.*, 915 out of 1445 total sealed cases).

31.     Moreover, any purported "flaws" claimed by Defendant would not significantly reduce the calculation of the number of sealed non-qui tam cases in any event, and so Defendant's point is (once again) immaterial.  I believe that to be so for several reasons.

32.     First, Kovakas Eighth Supp. Dec. ¶ 11 states that my analysis "does not take into account the four-month period between the time the statistical report that [I cite] (¶ 36) was prepared and the time the CASES snapshot [I reference] (¶ 35) was taken."  However, generally, the total number of qui tam cases under seal would not be expected to change materially in such a short span of time.  That is shown by comparing the number of pending investigations in Defendant's statistical report for the fiscal year 2006, *see* Long Sixth Supp. Dec. Ex. N at 6, with its statistical report for the fiscal year 2007, which reveals that the number of open qui tam cases had changed very slightly: from 915 (September 2006) to 967 (September 2007), which results in an average increase of just 17 cases for a four-month period.  *See* Defendant's Fraud Statistics, Qui Tam Intervention Decisions & Case Status as of September 30, 2007, a copy attached as Exhibit Z hereto, at 6.

33.     Second, Kovakas Eighth Supp. Dec. ¶ 11 speculates that my analysis "does not take into account the possibility that courts may not always lift a seal on a qui tam case simultaneously with the end of the government's investigation."  However, Mr. Kovakas provides no evidence to support his speculation that this occurs with any frequency that would materially change my original estimate, and thus once again does not offer any data to contradict my calculation.  Nor does Mr. Kovakas provide any evidence that every qui tam case under investigation by the Federal Government actually was recorded in the CASES database as a "filed" case (from the Government's perspective of recording matters in CASES) and thus covered by the Request.  If any significant number of qui tam investigations were not recorded in CASES as "filed" cases, then the actual number of non-qui tam cases could be even larger than the estimate that I originally provided.

    **E.  At A Minimum, Defendant Must Conduct A Segregability Analysis, And Release The Non-Exempt Sealed Cases Data That Plaintiffs Seek**

    34.    For all of the reasons set forth above, in my prior declarations, and in our memoranda of law and other submissions, I respectfully submit that Defendant should be ordered to release the sealed cases data that Plaintiffs seek.  At a minimum, because Defendant has conceded that at least some of the sealed cases data at issue is publicly available on PACER, and thus is not protected by a seal, it should be ordered to conduct a case-by-case segregability analysis, document what is and is not subject to a court seal, and release segregable non-exempt records for the requested fields that are not sealed.

    35.    Kovakas Eighth Supp. Dec. ¶ 17 n.7 concedes that a segregability analysis of sealed cases is technically feasible.

**III.   Defendant Cannot Withhold "Amount Sought" (V.I. 157-158, 160-165, 168-169, 173, 177-179), "Government Exposure" (V.I. 159, 180-84), And "Punitive HCFCA Award" (V.I. 171, 175) Fields**

    36.    Defendant does not point to any specific written instructions calling for the entry of attorney – or any – estimates in the "Amount Sought" fields.  That corresponds with Defendant's own manuals, which by their express terms direct that precise figures be entered, not estimates. *See, e.g.*, Long Sixth Supp. Dec. Ex. H (2007 Case Classification Manual) § 4.3.9 at 32 ("Y – Yes, Monetary relief sought.  Entered only if the complaint specifically states that monetary relief is sought.  U – monetary relief sought but amount unspecified or unable to be determined.  Dollar Amount – . . . Enter only the figures appearing after terms such as sought, seek(s), seeking. . . .  'in excess of' or other vague phrases – If the dollar amount is undetermined or the phrase 'in excess of' or 'approximately' is followed by a dollar amount, a 'U' for Unknown is entered in the Relief Sought field.").

37.     Kovakas Eighth Supp. Dec. ¶ 22 argues that the 2007 DBI Manual instructs contractors to seek attorney estimates where the amount sought is unspecified in a complaint.  But Mr. Kovakas does not point to any text in that manual that instructs Defendant's contractors to input values based on an attorney's estimate for these fields.  As I explained in Long Supp. Dec. ¶ 56, and contrary to Mr. Kovakas's unsubstantiated assertion, Defendant's QA Manual describes what DBI analysts are actually supposed to ask attorneys when monetary relief is sought but the amount sought is not specified in the complaint: "If the amount of monetary relief is sought but the amount has been left unspecified, the QA Reviewer notes on the CACL that the amount being sought by the opposition has been left unspecified and that the DBI analyst should ask the attorney in the interview *whether or not the opposition is seeking a specific amount*."  Long Sixth Supp. Dec. Ex. R § 3.5.3 at 24 (emphasis added).  That manual never directs Defendant's DBI staff to seek attorney estimates for those fields.

38.     Moreover, Defendant's manuals demonstrate that those documents are the sole authoritative source for instructions on how information should be entered into CASES.  Information in the "Amount Sought" fields is entered into CASES by contract staff that comprise the Case Classification Unit and DBI Unit.  *See* Long Sixth Supp. Dec. Ex. H (2007 Case Classification Manual) § 1.1 at 1 ("The CU [Case Classification Unit] is composed of contractor personnel and is responsible for classifying cases, recording case information and following all associated procedures and guidelines."); Long Sixth Supp. Dec. Ex. I (2007 DBI Manual) § 3.11 at 20 ("The DBI Unit is responsible for assuring that forms are complete and correct and updating the system as soon as possible.").  Defendant's 2007 Case Classification Manual makes clear that its instructions "represent[] the coordinated and agreed-upon approach between OMI and the contractor regarding CU procedures" for entering data into CASES.  *See* Long Sixth Supp. Dec. Ex. H § 1.1 at 1.  That manual also demonstrates that changes to the instructions may only be made in

writing.  *See id.* § 1.2 at 2 ("Changes to this manual may only be accomplished by a COTR-approved Classification Alert (referred to as Letter of Instruction (LOI) in the contract) . . . .  Upon issuance of Classification Alerts, the new procedures supersede the policy as it is written in the manual. Published Classification Alerts should be documented in the table entitled Record of Changes that precedes the table of contents in this manual.").  The same is true for Defendant's other manuals. *See, e.g.*, Long Sixth Supp. Dec. Ex. I (2007 DBI Manual) § 1.4 at 5 ("Changes to the instructions provided within this document will be disseminated through Letters of Instruction (LOI) emanating from the Office of Management Information . . . . [I]f the CMA receives a request from a Civil Division Branch asking for a modification to any instruction outlined within this guide, the person making the request will be advised to submit his or her request for change in writing to the Contracting Officer's Technical Representative (COTR) for consideration.  If approved, an appropriate LOI will be published.").  Any written materials superseding the instructions laid out in Defendant's manuals would be responsive to Part B of my FOIA request, but Defendant has released no such written materials, or any materials calling for the entry of estimates in the "Amount Sought" fields.

39.     Defendant's manuals make clear that personnel should not deviate from the written instructions, and they demonstrate that Defendant has established quality control procedures to ensure that such deviations do not occur.  For example, Defendant's 2007 Case Classification Manual describes a Quality Control Review process by which the data input performed by Defendant's contractor staff is reviewed for accuracy.  *See* 2007 Case Classification Manual, excerpts of which are attached as Exhibit AA hereto, § 7 at 65-66.  Appendices P and Q to that manual contain samples of the quality review forms that are used, and note even the smallest deviation as an impermissible error.  *See id.* at App. Q (missing semi-colon noted as an error).  Similarly, Defendant also has instituted similar formal procedures for its Database Integrity (DBI) Unit to ensure accuracy

in adherence to the written instructions contained in Defendant's manuals.  *See* 2007 DBI Manual, excerpts of which are attached as Exhibit BB hereto, § 7 at 39-40.

40.     Kovakas Eighth Supp. Dec. ¶ 30 expresses his disagreement with my assertion in Long Sixth Supp. Dec. ¶ 68 that the "Government Exposure" field contains an attorney's assessment of a case's value only when one of four special codes is recorded in a "special code" field.  But the 2001 DBI Manual, which Mr. Kovakas quotes on that point, does not support his argument.  Instead, the manual states that one of those four special codes (or "flags") must be entered when an attorney assessment is made.  Long Sixth Supp. Dec. Ex. Q § 5.2.2 at 22.

41.     Defendant already has designated, through redaction markings, the entries that contain one of those four flags.  *See* "Release 4 Instructions" spreadsheet with redaction instructions, provided by Defendant to Plaintiffs in July 2007 data release, a complete copy of which spreadsheet is attached as Exhibit CC hereto, at 7-8 (redaction instructions for the special code fields state "replace w/* when SP = 504, 505, 515, or 516").  Thus, the use of the codes as flags does not "reveal the code itself, thus destroying the exemption claim for the code," Kovakas Eighth Supp. Dec. ¶ 30.

42.     Regarding the "Punitive HCFCA Award" fields, Kovakas Eighth Supp. Dec. ¶ 34 asserts that the amounts collected by Defendant or disbursed into the Health Care Control Account may differ from the amount of the original debt established by the judgment.  Even if true, his point is totally irrelevant.  As soon as a Civil Fraud disposition form is completed, "[t]he Civil Division's Budget Office opens an accounts receivable account."  *See* Long Sixth Supp. Dec. Ex. I (2007 DBI Manual) § 3.11.3 at 21.  Disbursements to the Health Care Control Account necessarily would depend on the payments made on the debt that the judgment establishes are owed to the Government.  But the information recorded in the "Punitive HCFCA Award" fields – Defendant's

*allocation* to the Health Care Control Account of funds to be recovered – occurs at the time of disposition, and so is a purely historical fact.

**IV.    Defendant Cannot Withhold Records In The "Alien Registration Number" Fields (V.I. 336-337) That Are Used As BIA Docket Numbers In BIA Cases Appealed To The Courts Of Appeals**

43.    Plaintiffs seek only those alien registration numbers that are used as docket numbers in appeals from the Board of Immigration Appeals (the "BIA") to the Courts of Appeals. Therefore, Kovakas Eighth Supp. Dec. ¶ 35's suggestion that the specific information Plaintiffs seek "are not 'docket numbers'" is incorrect.  Each of the alien registration numbers at issue is a case number assigned to particular immigration case (*i.e.*, a BIA docket number).  It is Defendant's Executive Office of Immigration Review ("EOIR"), the office within DOJ responsible for adjudicating immigration cases and overseeing the Immigration Courts and the BIA (whose employees all work for Defendant), *see* Long Sixth Supp. Dec. ¶ 85 & Ex. U, that has chosen to use alien registration numbers for such a purpose.

44.    The fact that alien registration numbers are used as BIA docket numbers is confirmed by multiple sources.  The Immigration Court Practice Manual explains that "[c]ases before the Immigration Courts and the Board of Immigration appeals are tracked by A[lien registration] number."  Long Sixth Supp. Dec. Ex. V at glossary 1.  The Court of Appeals docket sheet for an appealed BIA decision will display the BIA docket number to indicate the court of origin.  *See id.* Ex. Y-AA; Supplemental Declaration of Paul G. Lang ¶¶ 4-6 & Exs. A-K.  The U.S. Department of Homeland Security Handbook for Safeguarding Sensitive Personally Identifiable Information further confirms that fact.  A copy of the relevant portions of that handbook is attached as Exhibit DD hereto.  It states, "[y]ou may also use an A[lien registration number] as a case number for matters pending before the Department of Justice, Executive Office of

Immigration Review and Board of Immigration Appeals, or for immigration matters pending before the federal courts." *Id.* at 9.[3]

45.     Defendant plays a central role in each stage of an immigration case that is ultimately appealed to the Courts of Appeals.  Such cases are initiated in the Immigration Courts, which are then appealed to the BIA.  As noted, both Immigration Judges and BIA members are employees of Defendant.  Defendant's EOIR oversees the operation of both of those components.  *See* Long Sixth Supp. Dec. Ex. U.  And Defendant's Office of Immigration Litigation represents the Government when the case is appealed to a Court of Appeals.  *See* Long Sixth Supp. Dec. Ex. EE. Thus, Defendant plays a central role in each stage of that process, and the public has a strong interest in evaluating how Defendant executes that responsibility.  The public also has a strong interest in examining how those different components of Defendant – each serving under the direction of the U.S. Attorney General – function together, because the ultimate outcome in immigration cases obviously is a product of the totality of their actions and decisions.

46.     As a result of another FOIA request, Plaintiffs, with the cooperation of Defendant's EOIR, have linked detailed information in EOIR's database (which is not part of the CASES database at issue here) regarding Defendant's handling of each case before the Immigration Courts with detailed information regarding Defendant's subsequent handling of those cases that are appealed to the BIA.  Without disclosure of the BIA docket numbers at issue, however, cases appealed from the BIA cannot be linked to the corresponding Courts of Appeals decisions, which is

---

[3] Accordingly, Mr. Kovakas clearly is wrong in his attempt to analogize the alien registration numbers at issue to social security numbers of individuals who have been a party to a proceeding in the Tax Courts or Bankruptcy Courts.  *See* Kovakas Eighth Supp. Dec. ¶ 38.  To my knowledge, neither the Tax Courts nor the Bankruptcy Courts use social security numbers as docket numbers. My understanding is that Federal Rule of Civil Procedure 5.2, and Local Rule 8.1 of this Court, require that filings may include only the last four digits of a social security number, but that neither Rule places such a restriction on the use of alien registration numbers.

data that is stored in CASES.  That prevents Plaintiffs – and the public – from fully evaluating Defendant's handling of immigration cases, including, for example, the determination of how often a particular Immigration Judge or BIA member is reversed or affirmed on appeal (*i.e.*, his or her reversal rate), the effectiveness of Defendant's efforts to improve the quality of adjudications in immigration cases, and Defendant's defense of those cases.  *See* Long Sixth Supp. Dec. ¶¶ 91-95. The BIA docket numbers at issue are the only means that I am aware of that allow Plaintiffs – and the public – to accurately link the three stages of an immigration case in order to conduct such analysis.  That use of the BIA docket numbers at issue is consistent with their role as docket numbers, which identify the particular BIA case that is the subject of appeal.

47.    The public has an extremely strong public interest in evaluating Defendant's handling of its duties.  *See id.* ¶¶ 84-90.  Immigration cases are critical to the national values and the national security of the United States.  *See id.* Ex. KK at 2 ("The accuracy of an asylum decision is critical . . . .  An incorrect denial may result in an applicant being returned to a country where he or she had been persecuted . . . .  At the other extreme, an incorrect approval of an asylum application may allow terrorists to remain in the United States . . . .").

48.    TRAC's previous studies have been cited frequently by immigration rights groups, as well as attorneys representing aliens, in examining how the Government carries out its duties.  Links to citations to those studies, and reliance by others on TRAC's work, can be found at http://trac.syr.edu/tracatwork/.  TRAC's studies commonly examine the Government's actions viewed from different perspectives – that of separate units within the same department, that of different departments, and that of different branches of Government – in order better to determine if, examined holistically at different levels, they are efficiently and fairly carrying out their statutory duties on behalf of the public.

20

49.     Kovakas Eighth Supp. Dec. ¶ 43 contends that, instead of obtaining the BIA docket numbers at issue from Defendant, Plaintiffs "could simply gather all the alien registration numbers from the Courts of Appeals docket sheets and match them with the Immigration Court and BIA records," and that "disclosure of the alien registration numbers that occur in CASES would at most serve as a convenience to plaintiffs."  Mr. Kovakas's self-serving and conclusory assertions are wrong.  I submit that Defendant cannot discharge its duty under FOIA to disclose non-exempt information by merely stating (even if true) that such information is publicly available through other sources.[4]

50.     Mr. Kovakas has misinterpreted my discussion about linking information about a particular appeal from the BIA to a Court of Appeals, which is stored in different tables within CASES.  *See* Kovakas Eighth Supp. Dec. ¶ 39.  My discussion in Long Sixth Supp. Dec. ¶¶ 78-79 does not state or imply that the BIA docket numbers at issue are necessary to link other CASES

---

[4]  Kovakas Eighth Supp. Dec. ¶ 43 is incorrect in its contention that "plaintiffs could accomplish their presumed goal of matching CASES records with the records in completely separate government databases" using PACER, and without disclosure of the BIA docket numbers at issue. Specifically, Mr. Kovakas contends that this can be accomplished by gathering from PACER "all the alien registration numbers from Court of Appeals docket sheets and match[ing] them with Immigration Court and BIA records," and then gathering "the Court of Appeals docket numbers [from PACER] and match[ing]them with CASES records."  *Id.*  In this way, Mr. Kovakas incorrectly suggests that the Court of Appeals docket numbers obtained from PACER can be used to accurately link the records in EOIR's database relating to immigration cases with those in stored in CASES.

With access to the BIA docket numbers at issue, Plaintiffs can link directly the data for immigration cases in EOIR's database with the corresponding data in CASES.  By contrast, using Mr. Kovakas's method would require that an additional data source – PACER – link perfectly with EOIR's data and the CASES data.  Adding PACER as an additional source of data means that twice as many perfect matches are required, which doubles the chances of error.  That risk of error is compounded by any deficiencies in the recording of Court of Appeals docket numbers in CASES.  Indeed, from my review of the CASES data, Court of Appeals docket numbers are not always entered into the appropriate field, are entered inaccurately, or are entered in a format that differs from the format of those docket number as they are stored in PACER.  As a statistician with decades of experience linking records between and among government databases, and based upon my review of the CASES data, I submit that the use of PACER information in the manner that Mr. Kovakas suggests would significantly jeopardize the accuracy of the results derived from analyzing immigration cases.

fields together.  Rather, my discussion explains that, by identifying the particular case that is the subject of an appeal, the BIA docket numbers at issue provide the procedural history of appeals from the BIA to the Courts of Appeals, and where a remand occurs, the procedural history back to the BIA.

51.     Further, based on my examination of the CASES data, I submit that Mr. Kovakas is demonstrably wrong in asserting that the "ALIEN_NUMBER field in V.I. 337 . . . does not occur in any table associated specifically with immigration litigation" and that the "alien registration number in V.I. 337 has no relevance at all to the 'procedural history' of an immigration case."  Kovakas Eighth Supp. Dec. ¶ 39.  Because CASES is a relational database, the information about a particular appealed case from the BIA is recorded in many different tables within CASES.  One can link that information using the matter number, which is a unique identifier for each particular case.  As I explained in Long Sixth Supp. Dec. ¶ 70, one can identify the BIA docket numbers at issue using certain fields in the ZIMMCAL01MAIN table as "flags."  Using those flags, I identified 49,995 matter numbers associated with such appealed BIA decisions to the Courts of Appeals.  Of those cases, 49,633 or almost all of them have a BIA docket number present in field V.I. 337.  In addition, in 2,654 of those cases, a BIA docket number is present only in field V.I. 337, but not in V.I. 336.  I determined that by examining records in each field for the presence of redaction markings, which Defendant placed in records in which the BIA docket numbers were withheld, and counting the number of cases in which redaction markings occurred in V.I. 337 but not in V.I. 336, where no value was recorded.  Accordingly, in CASES, there are a significant number of appealed decisions from the BIA, where the BIA docket number identifying the appealed case to the Courts of Appeals is stored only in V.I. 337 and not in V.I. 336.  Therefore, contrary to Mr. Kovakas's statement, V.I. 337 is highly relevant to the procedural history of the immigration cases at issue.

52.     If the BIA docket numbers at issue are not released in their entirety, then at a minimum I submit that the last four digits of those BIA docket numbers should be released.  As I explained in Long Sixth Supp. Dec. ¶¶ 97-98, from a statistical standpoint, the last four digits of the BIA docket numbers would be sufficient to provide, in most cases, the procedural history of an immigration case.  Accordingly, Kovakas Eighth Supp. Dec. ¶ 53 simply is wrong in its contention that "[i]ndividual characters or digits of an exempt word or number are not 'nonexempt,' nor do they have any independent meaning."  Mr. Kovakas's claim that the last four digits are meaningless is further belied by the common practice of displaying the last four digits of a social security number (as noted earlier, that is consistent with the Federal Rules and this Court's Rules) or the last five digits of a credit card number (as I understand is required under 15 U.S.C. § 1681c (g)).  Doing so protects an individual's privacy (Mr. Kovakas makes no claim that there is any cognizable privacy interest in the last four digits of the BIA docket numbers at issue), while providing "meaningful" information.

53.     The last four digits also are easily segregable, as I explained in Long Sixth Supp. Dec. ¶ 99.  Mr. Kovakas does not contest that fact.  Indeed, Defendant's current practice for responding to FOIA requests for certain information from LIONS, a database maintained by the Executive Office for United States Attorneys that is similar to CASES, is to release one or more characters in a database field while redacting the remaining characters.  A copy of a printout of a webpage describing the LIONS database is attached as Exhibit EE hereto.  LIONS includes a ROLE field, which is a two character code.  A copy of excerpts of Appendix A – LIONS Code List is attached as Exhibit FF hereto.  In criminal cases, those codes include "DG" (describing a gang member defendant), "DJ" (describing a juvenile defendant at the time of the offense), and "DP" (describing a public official defendant).  *Id.* at A-64.  In response to other FOIA requests for the ROLE field (field number 465) that involve ongoing investigations or sealed criminal cases, Defendant releases

"D*" for roles that start with D – that is, Defendant releases the first character and redacts the second character. That is shown in Defendant's Vaughn Index for the Centralized LIONS database, dated August 21, 2010, a copy of an excerpt of which is attached as Exhibit GG hereto. Accordingly, as demonstrated by Defendant's handling of FOIA requests for the ROLE field from the LIONS database, releasing the last four digits of the BIA docket numbers while redacting the remaining digits is technically feasible.

## V.   Defendant Cannot Withhold "Information Identifying Employees Seeking Government Representation" (V.I. 340-343, 346-347) Fields

54.     In Long Sixth Supp. Dec. ¶¶ 104-110, I explained that Mr. Kovakas was wrong to assert that the release of data that Plaintiffs seek would "automatically reveal that the individually-named defendant in a particular case had been sued in an individual, rather than official, capacity – a fact that otherwise is not discernible from any information in the primary CASES tables." *See* Kovakas Seventh Supp. Dec. ¶ 34. And I showed in those paragraphs that Defendant already had released data that identifies Government employees who had been sued in their individual capacity.

55.     Mr. Kovakas now argues that the CASES data that Defendant already has released does not negate its asserted privacy interest under principles of "practical obscurity" because the identification of that data requires "specialized knowledge" or cross-referencing of codes. *See* Kovakas Eighth Supp. Dec. ¶ 56. However, Mr. Kovakas then argues that "practical obscurity" does not apply to the specific CASES data that Plaintiffs seek. *See id.* Those arguments are internally inconsistent.

56.     Mr. Kovakas also argues that Defendant's previously-released CASES data would not identify Government employees who had been sued in an individual capacity in cases that raise more than one claim. *See* Kovakas Eighth Supp. Dec. ¶ 57. But that is incorrect. Because CASES contains

24

fields that identify the primary case type (DD 192; "zcase_type") as well as the secondary case type (DD 188; "zsec_casetype"), it is possible to identify Government employees who have been sued in cases that raise more than one claim.

57.     Defendant advances a new privacy interest in those fields by arguing that disclosing the names of Government employees who had been denied representation "would lead to further stigma and negative speculation because a denial suggests a government finding that representation is not 'in the interest of the United States.'"  *See* Def. Third Reply Mem. 23.  However, Defendant provides no evidence demonstrating that "stigma" or "negative speculation" would follow from the Government's denial of representation.  In fact, I submit that there is no basis for such "stigma" or "negative speculation" because there are several bases, unrelated to the merits of a case, for the Government to decline to represent an individual.  And the facts are contrary to Defendant's conclusory speculation, because, I submit, there are several bases, not even arguably related to the merits of a case, for the Government to decline to represent an individual.  For example, 28 C.F.R. § 50.15(b)(1) provides that the Government should deny representation when the employee's actions were not performed within the scope of his or her employment.  Representation also can be denied if there is a conflict of interest. *See* 28 C.F.R. § 50.15(a)(11).  Thus, a denial of Government representation would be unlikely to lead to any adverse speculation.  I submit that the privacy interest in the name of employees who have been granted or denied Government representation is non-existent or negligible.

58.     As I explained in Long Sixth Supp. Dec. ¶ 112, there is a significant public interest in the names of employees who have been granted or denied Government representation, because the public has a keen and substantial interest in determining whether those representation decisions were administered fairly.  Moreover, if granted, such representation decisions necessarily require a

commitment of Government funds and resources, and it is in the public's interest to see whether those resources have been allocated fairly.

59.     Def. Third Reply Mem. 24 now argues that Plaintiffs will not be able to analyze any bias in the grant or denial of Government representation by examining employee names.  However, as just one example why that is wrong, simply by looking at the names alone Plaintiffs will be able to examine the number and frequency of requests made by each Government employee and analyze whether those factors affect the Government's decision to grant or deny representation.  That analysis cannot be done without the link between the names of employees and Defendant's representation decision.  Thus, there is a significant public interest in the disclosure of that data.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 5th day of August, 2011.

       /s/  *Susan B. Long*
                Susan B. Long

## NOTICE OF ELECTRONIC FILING

I hereby certify that on August 5, 2011, I electronically filed a true and correct copy of the

above Seventh Supplemental Declaration of Susan B. Long with the Electronic Case Files System of

the Northern District of New York.

*/s/ Martin J. Crisp*
Martin J. Crisp

## CERTIFICATE OF SERVICE

I hereby certify that, on August 5, 2011, I caused a true and correct copy of the foregoing

Seventh Supplemental Declaration of Susan B. Long to be served electronically upon the following

parties or counsel:

Counsel for Defendant:
KATHRYN L. WYER
U.S. Department of Justice, Civil Division
20 Massachusetts Avenue, N.W.
P.O. Box 883
Washington, DC 20044
202-616-8475
kathryn.wyer@usdoj.gov

*/s/ Martin J. Crisp*
Martin J. Crisp